IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CA No.: 5:25-cv-00391

| | | |
|---|---|---|
| MARIE MARC, on behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>BUTTERBALL, LLC,<br><br>*Defendant*. | ) | **COLLECTIVE/CLASS ACTION COMPLAINT** |

COME NOW, Marie Marc ("Named Plaintiff" or "Marc") on behalf of herself and all others similarly situated, (collectively "Plaintiffs") by and through undersigned counsel, and hereby sets forth this collective action for violation of the Fair Labor Standards Act under § 216(b), and a representative action under the North Carolina Wage and Hour Act pursuant to Fed. R. Civ. P. 23, and alleges as follows:

## PRELIMINARY STATEMENT

1. Named Plaintiff, on behalf of herself and all others similarly situated, brings this action against Defendant Butterball, LLC ("Defendant Butterball" or "Defendant") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq*., for not fully compensating employees who work or have worked at Defendant Butterball.

2. This case concerns Defendant Butterball's policies and practices of failing to pay proper statutory overtime wages pursuant to the FLSA and earned and accrued wages such as promised wages including, but not limited to, straight and/or regular and premium rate wages on their regular pay date in violation of the NCWHA N.C. Gen. Stat. § 95-25.6, consistent with Defendant Butterball's earning statements and handbook to Plaintiffs, which provide promises

relating to promised straight, premium, shift differentials, among other compensation policies and practices, as required pursuant to N.C. Gen. Stat. § 95-25.13, to Named, Putative Plaintiffs and Rule 23 class members who work or worked at Butterball's North Carolina chicken processing plants.

3. Defendant Butterball maintains control over the working conditions of those working on the chicken processing line, including but not limited to setting the schedule of when they will work, the specifications for how they slaughter poultry, and the personal protective equipment they are required to wear. Employees working on the chicken processing line work long hours, and regularly more than forty (40) hours per week. The work is repetitive, gruesome, and often dangerous.

4. Plaintiffs consist of current and former employees working on the production floor and specifically on the production line in either first or second processing for Defendant Butterball. It is Defendant's systemic company-wide policy and practice to willfully fail and refuse to compensate employees for all statutory overtime compensation at time and one-half for all hours worked more than 40 in a week, due and owing to Plaintiffs and all other similarly situated employees, in direct violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.

5. In addition, Defendant Butterball is aware of Plaintiffs working generally in excess of forty (40) hours per week on a regular basis without being properly compensated time and one-half (1.5) for all hours over 40 per week.

6. Defendant is also aware that Plaintiffs engage in additional uncompensated time worked due to the integral nature of the work which requires Plaintiffs to don personal protective equipment ("PPE") to avoid cross-contamination, prior to the start of their shift and before they clock in, in addition to, the end of their shift, but clocking out prior to doffing all PPE, to ensure

all hours worked are accurately recorded. Moreover, Plaintiffs are required to work through their scheduled lunch breaks given the integral nature of the doffing and donning of PPE and repeated handwashing to avoid any contamination of food borne pathogens or cross contamination of the same; thus, such responsibilities require an extensive number of minutes to remove all PPE and wash off the chicken, blood, and guts, both before taking their lunch break, but also upon their return from their lunch break, requiring them to return early. Nevertheless, Defendants automatically deduct thirty (30) minutes for lunch breaks, and an additional thirty (30) minutes for rest breaks, irrespective of whether employees work through a substantial portion of such breaks.

7. With respect to Plaintiff's NCWHA claims, Defendant Butterball provides written promises notifying Plaintiffs of their non-exempt hourly status, premium overtime eligibility, promised hourly rates, promised bonuses, and/or shift differentials through an employee handbook and/or earning statements consistent with the NCWHA; indeed, despite Defendant Butterball providing written promises to compensate Plaintiffs for all recorded hours worked, including both for hours less than and in excess of forty (40) hours per week through an employee handbook and/or earning statements, Plaintiff and others similarly situated were not paid consistent with such written policies and practices in violation of N.C. Gen. Stat. §§ 95-25.6, 95-25.13, and 95-25.22.

8. Additionally, despite Defendant Butterball's written policies and practices as communicated to Plaintiffs, Plaintiffs were not compensated for either their recorded hours worked, and/or in connection with any compensable required donning before and after her scheduled shift, and/or (doffing/donning during breaks), unpaid bonuses, holidays, vacation, promised straight-time for hours worked less than 40 per week, promised premium rates for hours worked in excess of certain hours per week, including, but not limited to, time and one-half for hours worked over 40 per week, and/or, incorporated bonus earnings and/or shift differentials in

determining the appropriate premium rates(s) in connection with hours worked in excess of forty (40) hours per week, in violation of Defendant Butterball's written policies as required by the NCWHA. Therefore, such uncompensated wages were earned and accrued and remain unpaid in violation of N.C. Gen. Stat. §§ 95-25.6.

9. Defendants' practice of failing to compensate Plaintiffs at the appropriate promised straight time and overtime rates and failure to compensate Plaintiffs for all compensable work violates Plaintiffs' rights under the NCWHA for failing to fulfill its promised wages as laid out in writing via a handbook, earning statement, or job announcement/description, and consistent with any promised premium and/or overtime written policy for hourly employees. **These claims are separate and distinct from the FLSA**.

10. In addition, upon information and belief, Defendant illegally deducted the cost of required PPE from Plaintiffs' wages without ensuring the proper written authorization has been obtained by Plaintiffs, identifying such deductions as "Supply Store Purchase" when such sales are actually for the cost of required PPE, such as gloves and aprons. Such deductions violate N.C. Gen. Stat. §§ 95-25.6, 95-25.7, 95-25.8(a)(2), 95-25.13, and 13 NCAC 12. 0305(g).

11. Defendant Butterball's pay practices and policies are in direct violation of the FLSA; and therefore, Plaintiff, on behalf of herself, and all others similarly situated, seeks statutory overtime wages and the appropriate overtime wages for all overtime worked required, suffered, or permitted by Defendant Butterball, liquidated damages and/or other damages as permitted by the FLSA, attorneys' fees, costs, and expenses incurred in this action.

12. Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the following class:

> All individuals who, were, are, or will be employed at Defendant Butterball's North Carolina facilities as employees on the chicken

> processing line who were not compensated for all of their hours worked, above forty (40) per week any time within three years prior to the commencement of this action, throughout the present.

13. Defendant is liable for its failure to pay Plaintiffs for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

14. Plaintiffs who elect to participate in this FLSA collective action seek compensation for all work performed for Defendants, regardless of whether the work was performed outside scheduled shift times, compensation at the appropriate overtime rate for all hours worked in excess of forty (40) per week, an equal amount of liquidated damages, post-judgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

15. Plaintiff also brings this action on her behalf and as a representative of similarly situated current, former, or future processing line employees employed by Defendant Butterball in North Carolina, under the NCWHA.

16. Plaintiff Marc, who is a North Carolina resident and who worked for Defendant Butterball in North Carolina, asserts that she and the putative class, who works or worked in North Carolina for Defendant Butterball, are entitled to compensation for all work performed for Defendant Butterball, whether the workweek totaled greater or fewer than forty (40) hours, compensation at the appropriate regular or promised rate for hours worked less than 40 per week, and/or the promised and/or appropriate premium rate for all hours worked in excess of forty (40) per week, especially during workweeks when bonuses and/or shift differentials applied but were not included as part of the regular earnings for determining the appropriate premium rate(s), and/or bonuses that were promised but were unpaid, and for an equal amount of liquidated damages, *prejudgment interest* (which is not recoverable under the FLSA), and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d). These promises are

not enforceable under the FLSA, and thus the NCWHA is more stringent and provides greater protections to North Carolinians than the FLSA.

17. Plaintiff Marc seeks class certification under Rule 23 of the Federal Rules of Civil Procedure for the following proposed subclasses of Defendant Butterball's employees in North Carolina:

**Proposed Time-Shaving Sub-Class**

All individuals who were, are, or will be employed at Defendant Butterball's North Carolina facilities on the chicken processing line, who clocked in before putting on PPE and clocked out after doffing PPE, who experienced time-shaving from their actual recorded hours worked, based upon information and belief, including, but not limited, for hours worked above and below forty (40) each week, within two years prior to the commencement of this action, through the present. ("Pre/Post-Shift Work Time-Shaving Class").

**Proposed Automatic Lunch And/Or Rest Break Deduction Sub-Class**

All individuals who were, are, or will be employed at Defendant Butterball's North Carolina facilities on the chicken processing line, who were subjected to interrupted lunch and/or rest breaks, where such breaks were automatically deducted, without a corresponding time entry showing that a break was recorded and/or paid as hours worked, within two years prior to the commencement of this action, through the present. ("Deduction Lunch And/or Rest Break Class").

**Proposed Illegal PPE Charges/Deduction Class**

All individuals who were, are, or will be employed at Defendant Butterball's North Carolina facilities on the chicken processing line, within two years prior to the commencement of this action, through the present, who were subjected to deductions for personal protective equipment without any advance written notice of the intent to make such wage deduction in the manner required by the NCWHA at any time within two years preceding the filing of this action, through the present. ("Illegal PPE Charges/Deduction Class").

18. In addition, Named Plaintiff Marc brings this action to remedy Defendant Butterball's unlawful acts upon Named Plaintiff Marc exercising her rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, upon Plaintiff's need to exercise her rights under the FMLA and FMLA-qualifying leave.

19. Accordingly, Plaintiff seeks all available relief for these claims, including, but not

limited to, back pay, front pay, past pecuniary losses, prejudgment interest, compensatory damages, punitive damages, attorney's fees and costs, consequential damages, and all other relief permitted by applicable law.

## PARTIES

20. Defendant Butterball is a turkey processing company serving over thirty (30) countries across the globe.[1] Upon information and belief, Defendant has more than 6,000 employees, including at locations in Arkansas, North Carolina, and Missouri.[2]

21. According to information and belief, Defendant Butterball's net income for the year 2023 was approximately $166 million dollars.[3]

22. Defendant Butterball LLC is a limited liability corporation, organized under North Carolina law and has its principal place of business at One Butterball Lane, Garner, North Carolina 27529. According to its website, Defendant Butterball is "America's most recognized turkey brand and the most loved in the United States."[4]

23. Named Plaintiff is an adult citizen and resident of the state of North Carolina, residing in Mount Olive, North Carolina. Named Plaintiff worked for Defendant Butterball as a tender cutter.

24. The FLSA collective action and Putative Plaintiffs consist of individuals who have worked for Defendant Butterball, who were paid an hourly wage, and who were not properly paid consistent with the FLSA's statutory overtime requirement.

25. At all times material to this action, Defendant Butterball has been, and continues to be, an "employer" engaged in "commerce or in any industry or activity affecting commerce,"

---

[1] *See* https://www.butterball.com/international

[2] *See* https://www.linkedin.com/company/butterball-llc/life; https://www.butterball.com/locations.

[3] *See* Recent SEC Filings, 2023 – Form 10-K, (Feb. 13, 2024), https://www.seaboardcorp.com/investors/

[44] *Supra* fn. 1.

which employs fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year, within the meaning of the FMLA, 29 U.S.C. § 2611(4).

26. At all relevant times, Defendant has had gross operating revenues in excess of $500,000, consistent with 29 U.S.C. § 203(s)(1)(A)(ii).

27. Named Plaintiff Marc brings this action on her own behalf and, pursuant to 29 U.S.C. § 216(b), as a representative of a proposed collective action of similarly situated employees.

## JURISDICTION AND VENUE

28. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, based upon the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*.,

29. According to its website, Defendant Butterball operates in North Carolina and maintains a business location in Mount Olive North Carolina. The address of this location is 1628 Garner Chapel Road, Mount Olive, NC 28365.

30. The United States District Court for the Eastern District of North Carolina has personal jurisdiction because Defendant Butterball conducts business in Wayne County, North Carolina, which is located within this District.

31. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendant Butterball conducts business within the Eastern District of North Carolina, and the substantial part of the events or omissions giving rise to these claims occurred in this District.

32. The claims for violations of the NCWHA are based upon the statutory law of the State of North Carolina.

33. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the pendent state claims under the NCWHA because the state law claims arise out of the same nucleus of operative facts as the FLSA claims.

34. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

35. The evidence establishing liability for the causes of action will be similar, and the state law claims will not predominate nor create confusion for a jury.

36. Upon information and belief, during the period relevant to this action, Defendant Butterball was an employer, joint employer, or member of an integrated, common enterprise, that employed Plaintiff, pursuant to the FLSA, FMLA, and NCWHA or its agents, held or implemented the power, *inter alia*, to control the work performance of Plaintiff, and Defendant Butterball directly received the benefit of Plaintiff's labor.

## COVERAGE

37. At all times material to this action, Defendant Butterball acted, directly or indirectly, in the interest of an employer with respect to Named, opt-in, and putative Plaintiffs.

38. At all relevant times material to this action, Defendant Butterball was an employer within the meaning of the FLSA, 29 U.S.C. § 203(d), the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

39. At all relevant times, Plaintiffs were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206, 207.

40. At all times material to this action, Defendant Butterball was an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or

materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

41. At all times material to this action, Defendant has been, and continues to be, an "employer" engaged in "commerce or in any industry or activity affecting commerce," which employs fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year, within the meaning of the FMLA, 29 U.S.C. § 2611(4).

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

42. Butterball is a turkey processing company serving over thirty (30) countries across the globe.[5]

43. Upon information and belief, Defendant has more than 6,000 employees, including at locations in Arkansas, North Carolina, and Missouri.[6]

44. Defendant Butterball employs individuals on an assembly line referred to as a "poultry processing line." Employees are assigned tasks such as deboning, slaughtering, packaging the chicken, and/or operating forklifts.

45. Regardless of which subsection of the turkey processing line Plaintiffs worked, Plaintiffs were generally responsible for facilitating the processing of turkey or chicken. Plaintiffs could and would be reassigned to various subsections of the processing line, including performing deboning, slaughtering, packaging, or operating forklifts, as needed, to ensure the seamless flow of poultry through the process.

---

[5] *See* https://www.butterball.com/international
[6] *See* https://www.linkedin.com/company/butterball-llc/life; https://www.butterball.com/locations.

## WAGE-RELATED FACTUAL ALLEGATIONS

46. Defendant Butterball compensates employees working on the poultry processing line, such as Named Plaintiff, on an hourly basis. Defendant classifies these employees as hourly non-exempt under the FLSA.

47. On or about January 2013, Plaintiff Marc started working for Defendant as a tender cutter, which is a section of the production line. Tender cutters prepped turkey tenders by pulling out the vein, managing the machines, cutting down larger pieces, and sorting the meat by size. She worked in this department until the end of her employment with Butterball.

48. Defendant Butterball employs individuals across several positions deemed to be "Operations and Production." Employees are assigned tasks such as machine operation, processing, grinding, blending, re-hanging, and production cutting. Regardless of which subsection of the chicken processing line Plaintiffs worked, Plaintiffs were generally responsible for facilitating the processing of chicken.

**Plaintiffs' Personal Protective Equipment Requirements ("PPE"):**

49. Plaintiffs working on any part of the chicken processing line are required to wear any of the following PPE items, which includes but is not limited to: boots, white protective clothing such as aprons, plastic covers, cloth gloves, rubber gloves, hair net, protective ear glugs, and a pincher tool.

**Plaintiffs' Duties:**

50. As a tender cutter, Plaintiff Marc's primary duties included removing veins from turkey tenders, properly managing machines, cutting down pieces that were 'too large,' and sorting meat by size.

**Pay:**

51. Upon information and belief, Plaintiff Marc was hired to work the second shift at a

rate of $19.00 per hour. Plaintiff Marc worked the second shift at Defendant for ten (10) years, transitioning to first shift as a result of her cancer diagnosis in July of 2023. At the time of Plaintiff's termination, September 2023, Plaintiff Marc earned $17.75 per hour.

52. Plaintiff Marc was terminated on or about September 18, 2023.

**Work Schedule, Lunch Breaks, and Average Hours Worked:**

53. Plaintiff Marc initially worked the second shift, which was scheduled from approximately 3:00 p.m. – 12:00 a.m. In July 2023, Plaintiff Marc transitioned to working first shift, scheduled from approximately 7:00 a.m. – 3:30 p.m. Both shifts were scheduled Monday through Friday with two (2) paid fifteen (15) minute breaks.

54. On occasion, Plaintiff worked under forty (40) hours per week when taking several days of vacation time, sick time, or PTO but not an entire week or as during the holiday season.

55. Defendant Butterball requires employees on the processing line to work scheduled shifts with a scheduled thirty (30) minute unpaid lunch break each day.

**Defendant's Time-Shaving Practices:**

56. To ensure Plaintiff had enough time to put on her PPE upon her arrival at Defendant's Butterball plant, Plaintiff would arrive approximately fifteen (15) minutes to forty-five (45) minutes prior to the start of her shift to begin retrieving and putting on (donning) her PPE.

57. Similarly, Plaintiff was required to spent additional time doffing gear, after the end of her scheduled shift. Indeed, Plaintiff spent an additional approximate ten (10) minutes removing required PPE following the end of her shift.

58. Despite being on the clock while donning and doffing her PPE, upon information and belief, Defendant shaved Plaintiff's actual recorded hours worked. Instead, upon information

and belief, Defendant paid Plaintiffs for their ***scheduled*** time, rather than for their actual hours worked based on clock in and out times.

59. As such, based upon information and belief, despite regularly working overtime, she was frequently paid for only thirty-eight (38) to forty (40) hours.

**Unpaid Working 30 Minute Lunch or Rest Breaks**

60. Defendant schedules employees for unpaid, thirty (30) minute lunch breaks. These lunch breaks were automatically deducted from Plaintiffs hours worked.

61. Irrespective of whether Plaintiffs took a meal break, Defendant automatically deducted a full thirty (30) minutes regardless of the actual time Plaintiffs spent engaged in their lunch break.

62. In addition, irrespective of whether Plaintiffs took a rest break, Defendant automatically deducted an additional thirty (30) minutes regardless of the actual time Plaintiffs spent engaged in their rest break.

63. Due to the nature of the work, Plaintiffs were required to remove or doff, wash, and sanitize their personal protective equipment and gear at the start of their thirty -minute breaks and were also required to wash, sanitize, and don personal protective equipment and gear before returning from their lunch break. On average, Plaintiffs lost an average of ten (10) minutes during each break.

64. Specifically, Plaintiffs often worked through a substantial portion of their lunch and rest break, continuing required duties, including, but not limited, properly removing their PPE and thoroughly washing their hands to avoid any cross-contamination of the product, acquiring food borne pathogens, or cross-contamination while also ensuring employees' safety. In other words, Plaintiffs were required to comply with OSHA safety required standards prior to the start of their

day, during lunch and rest breaks, and after completing their work on the processing line and completing their doffing activities. As such, each of Plaintiffs' lunch and rest breaks did not constitute a full, uninterrupted thirty minutes nor were they paid for all hours worked as communicated by Defendant that they would do so.

65. The actions described above are compensable work because the donning and doffing of protective and sanitary equipment and gear is required by Defendant, the United States Department of Agriculture, and the nature of the job, and as such, these activities are integral and indispensable to the turkey processing work the Plaintiffs perform.

66. Moreover, because Defendant had the capability to track each minute for Plaintiffs' lunch and rest breaks through its Kronos time clock, including but not limited to, determining how much time Plaintiffs engaged in required working time during such lunch breaks, Defendant has no excuse for not compensating Plaintiffs accordingly.

**Unauthorized Deductions for PPE:**

67. Additionally, on one or more weekly pay period(s) in the three-year period preceding the filing of this Complaint, Defendant made wage deductions from the weekly wages due to Named Plaintiff Marc, Putative Plaintiffs, and the members of the proposed Rule 23 class for a "Supply Store Purchase." According to information and belief, Plaintiffs were required to pay for PPE, such as gloves and aprons.

68. Such PPE should have been provided at no additional charge to Plaintiff Marc, Putative Plaintiffs, and Rule 23 class members.

69. As such, the deductions taken were not in compliance with the NCWHA.

70. Defendant was subject to a class action, filed on May 17, 2007, in the case *Liliana Marinez-Hernandez, et al., v. Butterball, LLC*, which involved FLSA and NCWHA allegations

related to Defendant's failure to compensate employees for time spent donning and doffing personal protective equipment. 578 F.Supp.2d 816 (E.D.N.C. 2008) (The Honorable Judge Malcolm J. Howard). In *Martinez-Hernandez*, the parties agreed to a settlement of four million dollars to compensate Plaintiffs, which was ultimately approved by the court. *See Id*., ECF 657 (March 1999, 2012). Despite changes made following such a lawsuit, including but not limited to, adding more time clocks and providing easier access to PPE, Defendant does not permit Plaintiffs to clock in immediately before acquiring and donning the first piece of personal protective equipment or allowing Plaintiffs the opportunity to remove, wash, and sanitize before clocking out at the end of their shift. More importantly, Defendant does not allow Plaintiffs to clock out before leaving for lunch or rest breaks, or clock back in prior to re-donning personal protective equipment, to ensure they are being compensated properly for all of their hours worked.

71. Indeed, despite the *Martinez-Hernandez* litigation, Defendant has continued to carry out unlawful pay practices, as alleged herein.

**NCWHA WAGE-RELATED FACTUAL ALLEGATIONS**

72. According to the NCWHA, "wages" include bonuses and other amounts promised, including hours up to forty (40) each week (and above forty hours per week), when the employer has a policy or a practice of making such payments. NC Gen. Stat. § 95-25.2(16), irrespective of any FLSA statutory obligation, Defendant Butterball has to pay overtime for hours over 40 per week, since such statutory obligation does not cover or protect Plaintiff and Putative Rule 23 class members' promised, unpaid, earned, and accrued wages, which are not recoverable under the FLSA.

**Promised Straight-Time Pay Pursuant to Defendant Butterball's Written Policies (Handbook and Earning Statements) Pursuant to the NCWHA**

73. Defendant's failure to compensate for all properly recorded hours worked,

including all work performed from the time Plaintiffs clocked in through the time Plaintiffs clocked out, work performed during lunch breaks up to forty (40) hours per week, and bonuses, and failure to pay employees all promised, earned, and accrued wages, has resulted in a failure to pay employees all promised and earned wages, especially due to promises made by Butterball to compensate Plaintiffs for all hours worked as noted in handbooks or as communicated through earning statements. In particular, during workweeks when Plaintiff and those similarly situated may not have worked a full week but were not compensated for all hours worked under forty (40), named Plaintiff and putative Plaintiffs and Rule 23 class members are entitled to their promised straight time rates.

74. For example, in one workweek where Plaintiff Marc may have only worked three days but was not compensated for working breaks or donning and doffing performed before and after the start of her scheduled shift, time during those three days, this would amount to hours worked, activities which could amount to up to an additional approximate hour per day, and this would amount to another 5 hours per week. Thus, in such a work week Plaintiff and those similarly situated $19.00 per hour multiplied by 5 unpaid hours worked, this would amount to $95.00 per week, and $4,940.00 (for approximately 52 weeks), and liquidated would amount to double the amount or $9880.00. This amount does not include pre-judgment interest at 8% from the first date that Plaintiff's unpaid wages became due through the present. As noted elsewhere, the NCWHA is more generous than the FLSA, and the pre-judgment interest is not recoverable under the FLSA.

**Promised Premium Pay Pursuant to Defendant Butterball's Written Policies (Handbook and Earning Statements) Pursuant to the NCWHA[7]**

[7] Plaintiff only seeks to recover unpaid promised premium overtime pay on her behalf and those similarly situated for the two years preceding the filing of the complaint because under the NCWHA, Plaintiff *may* obtain the more generous pre-judgment interest, which is not recoverable under the FLSA. Plaintiff does not intend to "double-dip" by seeking overtime under the FLSA during the same timeframe, as an FLSA claim for overtime would be limited to Plaintiff and those similarly situated putative plaintiffs only for the preceding third year (to the extent the Court grants

75. Similarly, Plaintiff Marc and others similarly situated were promised premium pay for all hours worked at time and one half consistent with written policies as laid out in their handbook or found in Plaintiffs' earning statements suggesting they would be compensated premium pay for hours over 40 per week, (irrespective of Butterball's statutory overtime obligation under the FLSA). Since there were approximately 5 hours per week that Plaintiff estimates she was not paid for (1 hour * 5 days) those hours were not paid at the promised premium rates for hours in excess of 40 per week. Alternatively, if she worked six (6) days, that would be 6 hours weekly.

76. For example, in one workweek where Plaintiff Marc may have worked a full week, but was not compensated for the entirety of their working lunch breaks during those five (5) days this would amount to thirty (30) minutes * five (5) days per week for a total of **2.5 hours**. Similarly, Plaintiff asserts coming to the plant ten minutes pre-shift to begin the donning/doffing process, multiplied by five (5) days, adds up to a total of **fifty (50) minutes**; similarly, to the best of Plaintiff's recollection, Plaintiff and those similarly situated a secondary thirty (30) minute rest break which was automatically deducted. However, the thirty (30) minutes were automatically deducted each day, despite the required doffing/donning and handwashing to avoid cross-contamination, which totaled another **2.5 hours** because such breaks did not constitute a full uninterrupted 30-minute breaks; thus, the entirety of either the lunch and/or rest breaks should have been compensated. Similarly, in light of the doffing activities at the end of the day which took Plaintiff and those similarly situated anywhere between an additional twenty-five (25) to fifty-five (55) minutes per day, for an average forty (40) minutes daily multiplied by 5 days per

---

willfulness) and only on behalf of herself and those who consent to participate in the lawsuit immediately after the filing of the complaint.

week, totaled conservatively an additional **3.5** hours. Thus, in such a work week Plaintiff and those similarly situated would be entitled to a minimum of **9.33** unpaid hours worked (2.5 +2.5+3.5+.83) at the promised premium rate of $28.50 per hour amount to approximately **$265.90** per week, and **$13,827.06** (for 52 weeks), and liquidated would amount to **$27,654.12**. This amount does not include prejudgment interest permissible under the NCWHA at 8% interest, which is not recoverable under the FLSA.

**<u>Promised Shift Differential Pay Pursuant to Defendant Butterball's Written Policies (Handbook and Earning Statements) Pursuant to the NCWHA</u>**

77. Defendant Butterball promised to pay Plaintiffs an additional shift differential for each hour worked during certain designated shifts, such as evening shifts. However, in failing to properly record all hours worked by Plaintiffs, Defendant Butterball also failed to pay the promised shift differential for every hour worked by Plaintiffs during designated shifts.

78. To the extent such differential pay amounts to $0.50 per hour, for a full five (5) hours, this amounts to $2.50 per week, and **$130.00** per year, and **$260.00** as double damages or liquidated, not to mention the prejudgment interest at 8%, which is not recoverable under the FLSA.

**<u>FMLA-RELATED FACTUAL ALLEGATIONS</u>**

79. Named Plaintiff brings the Third Cause of Action of the instant Complaint a claim on behalf of herself, for relief to redress and remedy Defendant's violations of the FMLA, 29 U.S.C. § 2612, *et seq*.

80. On or about July 3, 2023, Plaintiff Marc underwent a biopsy that revealed a malignant, invasive ductal carcinoma in her right breast.

81. Shortly after Plaintiff's diagnosis, she began required chemotherapy treatment.

82. On or about August 24, 2023, Southeastern Medical Oncology Center provided

Plaintiff Marc with the FMLA qualifying "serious condition certification" paperwork.

83. Because Plaintiff does not speak English, on or about August 24, 2023, Plaintiff's daughter, Minny Vanqui, ("Vanqui"), called Defendant's Human Resources Department to inform them of Plaintiff's diagnosis and requested FMLA on her mother's behalf due to the time off she would require as she underwent chemotherapy treatment.

84. During this interaction, Defendant's HR Representative, "Theresa," informed Vanqui that her mother could have three (3) months of paid leave under FMLA at a rate of $7.50 per hour, in addition to several weeks of unpaid leave as needed.

85. Despite the representations made by Defendant's Human Resources Representative, Plaintiff was never provided with any documentation for medical certification or otherwise. To the contrary, Defendant's Human Resources Representative instructed Plaintiff's daughter to begin the FMLA paperwork through Voya, Defendant's leave management provider.

86. On August 31, 2023, and despite a week-long silence from Defendant about the FMLA options available to Plaintiff, Vanqui was able to open a claim on Plaintiff's behalf.

87. Even though the process of obtaining FMLA through Voya had officially commenced, Defendant continued its silence as it related to the application of FMLA policies, procedures, and their application to the predicament faced by Plaintiff.

88. Despite the large number of Haitians who work on Butterball's turkey processing line who only speak Creole, Voya's website and phone line only contain options for individuals who speak English or Spanish. Thus, Marc would not have been able to meaningfully interact with the Voya website or helpline to inquire about the status of her request for FMLA because there were no options available to her in her native language.

89. Indeed, by virtue of directing all requests for FMLA to be completed through Voya,

Defendant effectively prevents a large number of its Creole speaking employees from being able to request leave which they are rightfully entitled to under federal law.

90. However, while Plaintiff's FMLA claim was still pending, she continued her work as a tender cutter. Plaintiff's role as a tender cutter required her to pull approximately fifteen (15) pound turkeys down for preparation. These tasks were difficult for Plaintiff, given the chemotherapy port and heart rate monitor installed as part of her treatment.

91. Plaintiff did not complain or request accommodation. Additionally, there is no evidence that her work performance suffered because of her breast cancer diagnosis. However, at all relevant times, Defendant was aware of Plaintiff's breast cancer diagnosis and her request for FMLA leave and/or need for accommodation in connection with her FMLA-related leave request.

92. As a matter of practice, when Plaintiff had chemotherapy during a workday, she provided a doctor's note to her supervisor the workday following the absence. From July 2023 to September 2023, no supervisor or HR representative instructed Plaintiff to record her absences in an alternative manner. Plaintiff believed that submission of a doctor's note to her supervisor, a non-Creole speaker, was sufficient because she had not been told otherwise.

93. During the first week of September 2023 and right after Plaintiff's FMLA claim was submitted to Voya, Defendant called Plaintiff in for a meeting with Defendant's Human Resources representative. During this meeting, Plaintiff was asked to sign a document written in English. Plaintiff, a non-English speaker, requested an interpreter to assist her in understanding the document. Defendant denied her request.

94. Plaintiff then asked if she could take a picture of the document, so she could send it to Vanqui to interpret it for her and also sought permission to call her daughter. Defendant's Human Resources representative again denied Plaintiff's request and directed Plaintiff to sign the

English-only document.

95. Plaintiff now understands that this document charged her with accumulating a certain number of points related to absences Plaintiff had taken for chemotherapy that counted against her employment.

96. Plaintiff never received a copy of the document. Because Plaintiff had no idea what she had been directed to sign, she continued to work after signing the document.

97. On two occasions, September 6, 2023, and September 14, 2023, Vanqui called Voya to check the status of Plaintiff's FMLA claim.

98. During the week of September 11-15, 2023, Plaintiff had an exceptionally difficult time recovering from chemotherapy treatment, and she did not attend work. Plaintiff received no notification regarding her work status from Defendant during this week.

99. On September 18, 2023, Plaintiff went to work and clocked in for her usual shift. She could not enter the building with her credentials, but she was able to access the building with other individuals. Before Plaintiff could get to her station, Defendant sent a Creole-speaking colleague to tell Plaintiff that she had accumulated too many points, and she needed to gather her things. Plaintiff was escorted from the building.

100. During this time, Plaintiff believed her FMLA claim was pending. Indeed, Vanqui called Voya on September 14 and September 18, 2023, to inquire as to the status of the claim and was informed that it remained pending. No further information was ever provided about FMLA, her FMLA request, or the basis for Plaintiff's termination.

101. On September 21, 2023, Marc received notification from Voya that her claim was denied. Specifically, "according to your employer and our database, you did not have Supplemental Health Benefits or Critical Illness benefits that were active at the time of your diagnoses [sic] of

cancer. You do not have Supplemental Health Benefits in the form of Critical Illness, and as a result, you are not eligible for benefits, and your claim is respectfully denied."

**FLSA COLLECTIVE ACTION ALLEGATIONS**

102. Named Plaintiff brings the First Count of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of herself and all similarly situated employees.

103. Similarly situated employees, for purposes of the FLSA collective action claims, include individuals who were, are, or will be employed by Defendant Butterball as processing line employees, at any time within the three (3) year period prior to the date of the commencement of this action, through the present, and who did not receive compensation for all hours worked.

104. The members of the proposed collective action, like Named Plaintiff, are production line employees, have substantially similar job requirements and pay provisions, and are subject to common practices, policies, or plans that fail to compensate them for all work performed at the appropriate rate.

105. Upon information and belief, there are hundreds of putative Plaintiffs and or similarly situated current and former production line employees that fall within the scope of the aforementioned FLSA class.

106. The members of the proposed collective action are known to Defendant Butterball, are readily identifiable, and may be located through Defendant Butterball's records.

107. Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Named and putative Plaintiffs.

108. Members of the proposed FLSA class, therefore, should be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).

109. Pursuant to 29 U.S.C. § 216(b), attached to and filed with the original Complaint

as Exhibit A, is the Consent to File Suit as Plaintiff executed by Named Plaintiff. As this case proceeds, it is likely other individuals will file consent forms and join as opt-in plaintiffs.

110. Named Plaintiff requests that she be permitted to serve as representative of those who consent to participate in this action and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

## NCWHA CLASS ACTION ALLEGATIONS PURSUANT TO RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

111. Named Plaintiff brings the Second Cause of Action of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and all similarly situated employees, for relief to redress and remedy Defendant's violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, et seq.

112. Numerosity: The proposed class is so numerous that joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Plaintiff at this time, upon information and belief, the class comprises more than one thousand individuals.

113. Common Questions Predominate: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and these common questions of law and fact predominate over any questions affecting members of the proposed class individually, in that all putative class members have been harmed by Defendant Butterball's failure to lawfully compensate them. The common questions of law and fact include, but are not limited to, the following:

a. Whether the time spent donning, doffing personal protective equipment, sanitizing, or waiting to sanitize constitutes hours worked;

b. Whether Defendant shaved Plaintiffs' hours worked to their scheduled shift

time, regardless of the amount of time actually worked according to the Plaintiffs clock in and out times;

c. Whether work performed by Plaintiffs during auto-deducted a thirty (30) minute meal break and rest break is compensable under the NCWHA;

d. Whether Defendant's failure to compensate putative Class Members for all hours worked due to Defendants' policy and practice of automatically deducting lunch breaks violates the NCWHA;

e. Whether Defendant failed to compensate putative Class Members at the earned, accrued, and/or promised rates for all hours worked, including, but not limited to, straight time, shift differential, bonuses, PTO, and/or premium pay on their regular pay date, and hours worked in excess of forty (40) each week, in violation of the NCWHA pursuant to § 95-25.6; and

f. Whether Defendant failed to compensate putative NC Class Members for all of their earned, accrued, and/or promised wages, including, but not limited to, straight time and overtime on their regular pay date, in violation of the NCWHA.

g. Whether Defendants provided any advance written notice of their intent to make a wage deduction for PPE in the manner required by NCWHA § 95-25.8, *et seq*.; and

h. Whether Defendant provided Plaintiff and the class of persons she seeks to represent with any form of written notice of their intent to make a wage deduction for PPE, and whether such notice complied with the requirements of the NCWHA § 95-25.8, *et seq*.

114. Typicality: The claims of Plaintiff are typical of the claims which could be alleged by any member of the putative class, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions. All putative class members were subject to the same compensation practices of Defendant Butterball, as alleged herein, of failing to pay putative class members for all hours worked at the promised hourly rate(s). Defendant Butterball compensation policies and practices affected all putative class members similarly, and Defendant Butterball benefited from the same type of unfair and/or unlawful acts as to each putative class member. Plaintiffs and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

115. Adequacy of Representation: Named Plaintiff is able to fairly and adequately protect the interests of all members of the proposed class, and there are no known conflicts of interest between Named Plaintiff and members of the proposed class. Named Plaintiff has retained counsel who are experienced and competent in both wage and hour law and complex class action litigation.

116. Superiority: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries, and damage suffered by each of the individual class members may be small for some in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing

the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially greater than if the claims were treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications concerning the individual members of the class, establishing incompatible standards of conduct for Defendant, and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they are not parties. The issue in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

117. Public Policy Considerations: Defendant Butterball violated the NCWHA. Just as current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class action lawsuits provide class members who are not named in the complaint a degree of anonymity, which allows for vindication of their rights while eliminating or reducing these risks.

118. Pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and members of the proposed class.

**COUNT ONE**
**Violation of the Fair Labor Standards Act**
**Brought by Plaintiff on Behalf of Herself and All Similarly Situated Employees**

119. Plaintiffs incorporate by reference all preceding paragraphs as if the same were repeated here verbatim.

120. At all relevant times, Defendant Butterball has been and continues to be an "employer" engaged in interstate "commerce" and/or in the production of "goods" for

"commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

121. At all relevant times, Defendant Butterball has employed, and continues to employ, "employee[s]," including Named Plaintiffs, and each of the members of the prospective FLSA Class, that have been, and continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

122. At all relevant times, Defendant Butterball has had gross operating revenues in excess of $500,000.

123. The FLSA, pursuant to §§ 206 and 207, requires each covered employer, including Defendant Butterball, to compensate all non-exempt employees at a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed more than forty (40) hours in a single workweek.

124. Defendant Butterball's failure to pay Plaintiffs for all hours worked, and at the appropriate overtime rate for hours worked in excess of forty (40) per week, in weeks where Plaintiffs worked over 40 hours, although, upon information and belief, Defendant Butterball knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b), since Defendant Butterball cannot show it acted in good faith, and a three (3) year, rather than two (2) year statute of limitations, since Defendant Butterball's acts constitute willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

125. As a result of Defendant Butterball's unlawful acts, Plaintiffs have been deprived of compensation for all required hours worked, and appropriate compensation for all overtime hours worked, and are entitled to recovery of such amounts, liquidated damages, post-judgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

126. Plaintiffs and putative plaintiffs each worked more than forty (40) hours in one or more workweeks within the applicable statutory period.

## COUNT TWO
**Violation of the North Carolina Wage and Hour Act**
**N.C. Gen. Stat. § 95-25.6**
**Brought by Plaintiff on Behalf of Herself and All Similarly Situated Employees**

127. Plaintiffs incorporate by reference all preceding paragraphs as if the same were repeated here verbatim.

128. The class period for this cause of action is at least two years from the date of the filing of the initial complaint.

129. At all relevant times, Defendant Butterball has employed, and/or continues to employ, putative Plaintiffs and Rule 23 class members within the meaning of the NCWHA.

130. Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and promised wages, on the employee's regular payday.

131. Additionally, North Carolina law requires every employer to notify employees of the promised wages and the day of payment, as well as make available a written version of the employment practices and policies regarding promised wages. *See* N.C. Gen. Stat. § 95-25.13(1)-(2).

132. Acceptable measures of providing employees information about promised wages include "an up-to-date employee handbook or other written statement of policies and practices with regard to promised wages" or through "payroll records, including check stubs, for wages promised in the form of hourly pay or salary or other form whose terms are readily identifiable from payroll records," and employers are required to pay such promised wages. Notification of Employment, 13 N.C.A.C. 12.0805 (2022).

133. Additionally, "[a]n employee's signature on an employer's written notice of the promised wages which bears the date on which the employee was provided with the notice shall be presumptive evidence of the employer's notification in accordance with G.S. 95-25.13(1)." Notification at Time of Hiring, 13 N.C.A.C. 12.0804 (2022).

134. Invariably, ***"[o]nce a promise is made by an employer, that employer must pay all promised wages, including wage benefits, accruing to its employees based on any policy, agreement or practice that the employer has established***." *See* North Carolina Department of Labor, *Promised Wages Including Wage Benefits*, https://www.labor.nc.gov/workplace-rights/employee-rights-regarding-time-worked-and-wages-earned/promised-wages-including.

135. Pursuant to the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6, Defendant Butterball was required to pay Plaintiff and putative class members all wages, when due, for all promised earned and accrued regular, straight, and overtime wages of one and one-half times the promised wage rate, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday; this requirement is not covered by the overtime provision under the FLSA.

136. Moreover, the FLSA's Savings Clause pursuant to § 218(a) provides that employers should comply with the more stringent of the FLSA and state wage and hour laws. Because the NCWHA provides more stringent protection than the FLSA, the FLSA does not preempt the NCWHA.

137. Every employer shall maintain complete and accurate records that document, in relevant part, the hours worked each workweek, and all other records required to compute wages. 13 NCAC 12.0801.

138. Defendant Butterball intentionally refused to pay all wages due, including wages

for all hours worked, as accurately recorded by Plaintiffs, and as outlined in the preceding paragraphs of this Complaint, to Plaintiff and putative class members in violation of the NCWHA.

139. Defendant Butterball was aware that Named Plaintiff and putative Plaintiffs were not receiving all straight-time wages for all hours worked up to forty (40), shift differential, bonuses, and/or premium overtime wages for hours worked in excess of forty (40) per week pursuant to the promised straight-time rate and corresponding premium overtime rate.

140. Defendant Butterball employed Named and putative Plaintiffs within the State of North Carolina.

141. At all relevant times, Defendant Butterball, according to its policies and practices, failed and refused to pay Plaintiffs all owed, earned, and promised wages, including for all work-related activities performed pre and post shift donning and/or doffing activities, including through lunch breaks, and at the appropriate promised overtime rate that Named and Putative Rule 23 class members are lawfully entitled to for hours worked in excess of forty (40) in a single workweek according to the NCWHA.

142. Consistent with the above, Defendant's failure to pay Plaintiffs all owed, earned, and promised wages violated N.C. Gen. Stat. § 95-25.6.

143. As a result of Defendant's unlawful policies and practices, Plaintiffs have been deprived of compensation due and owing.

144. Defendant's failure to pay Plaintiffs all owed, earned, and promised wages, even though, upon information and belief, Defendant Butterball knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages, under N.C. Gen. Stat. § 95-25.22(a1).

145. Due to Defendant Butterball's unlawful acts, Plaintiffs have been deprived of all

compensation due under the law, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d).

**COUNT THREE**
**Interference in Violation of the Family Medical Leave Act ("FMLA")**
**29 U.S.C. § 2601, *et seq*.**
**Brought by Named Plaintiff on Behalf of Herself**

146. Named Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

147. Among the purposes of the FMLA, under 29 U.S.C. § 2601(b)(1) and (2), are to "balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity," and "to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition."

148. The FMLA, pursuant to § 2615(a)(1), makes it unlawful for employers to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under [the FMLA].".

149. Upon acquiring knowledge that an employee's leave may be for an FMLA-qualifying reason, an employer must provide the employee notice of the employee's eligibility to take FMLA leave within five business days. *See* 29 CFR § 825.300 (b)(1)

150. Refusing to authorize FMLA leave, discouraging an employee from using such leave, and manipulating to avoid responsibilities under the FMLA are qualifying examples of forbidden interference with an employee's right to seek FMLA leave. *See* 29 CFR § 825.220 (b).

151. The FMLA defines an "employer" as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day

during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i).

152. At all relevant times, Defendant has been and continues to be a "covered employer" engaged in "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FMLA.

153. At all relevant times, Defendant has employed, and continues to employ, "employee[s]," including Named Plaintiff, within the meaning of the FMLA, 29 U.S.C. § 2611(2)(A).

154. The FMLA, pursuant to §§ 2612 and 2613, entitles all eligible employees to a total of twelve (12) workweeks of leave during any twelve (12) month period for "a serious health condition that makes the employee unable to perform the functions of the position of such employee."

155. On or about July 3, 2023, Plaintiff Marc underwent a biopsy that revealed a malignant, invasive ductal carcinoma in her right breast.

156. Om or about August 24, 2023, Southeastern Medical Oncology Center provided Plaintiff Marc with the "serious condition certification" paperwork.

157. On or about August 24, 2023, Plaintiff's daughter, Minny Vanqui, called Defendant's Human Resources Department to inform them of Plaintiff's diagnosis and request FMLA on her mother's behalf due to the time off she would require as she underwent chemotherapy treatment.

158. While Plaintiff's FMLA claim was still pending, she continued her work as a tender cutter. Plaintiff's role as a tender cutter required her to pull approximately fifteen (15) pound turkeys, or greater, down for preparation. These tasks were difficult for Plaintiff, given the

chemotherapy port and heart rate monitor installed as part of her treatment.

159. As a matter of practice, when Plaintiff had chemotherapy during a workday, she provided a doctor's note to her supervisor the workday following the absence. From July 2023 to September 2023, no supervisor or HR representative instructed Plaintiff to record her absences in an alternative manner. Plaintiff believed that submission of a doctor's note to her supervisor, a non-Creole speaker, was sufficient because she had not been told otherwise.

160. At all relevant times, Defendant was aware of Plaintiff's breast cancer diagnosis and her request for FMLA leave and/or need for accommodation in connection with her FMLA-related leave request.

161. During the first week of September 2023 and right after Plaintiff's FMLA claim was submitted to Voya, Defendant called Plaintiff in for a meeting with Defendant's Human Resources representative. During this meeting, Plaintiff was asked to sign a document written in English. Plaintiff, a non-English speaker, requested an interpreter to assist her in understanding the document. Defendant denied her request.

162. Plaintiff then asked if she could take a picture of the document, so she could send it to Vanqui to interpret it for her and also sought permission to call her daughter. Defendant's Human Resources representative again denied Plaintiff's request and directed Plaintiff to sign the English-only document.

163. Plaintiff now understands that this document charged her with accumulating a certain number of points related to absences Plaintiff had taken for chemotherapy that counted against her employment.

164. Plaintiff never received a copy of the document. Because Plaintiff had no idea what she had been directed to sign, she continued to work after signing the document.

165. On two occasions, September 6, 2023, and September 14, 2023, Vanqui called Voya to check the status of Plaintiff's FMLA claim.

166. During the week of September 11-15, 2023, Plaintiff had an exceptionally difficult time recovering from chemotherapy treatment, and she did not attend work. Plaintiff received no notification regarding her work status from Defendant during this week.

167. On September 18, 2023, Plaintiff went to work and clocked in for her usual shift. She could not enter the building with her credentials, but she was able to access the building with other individuals. Before Plaintiff could get to her station, the same individual from Human Resources who requested that she sign the English document told Plaintiff that she had accumulated too many points, and she needed to gather her things. Plaintiff was escorted from the building.

168. At all relevant times, Defendant, pursuant to their policies and practices, willfully failed to provide Plaintiff with the twelve weeks of leave to which she was legally entitled.

169. Defendant's unlawful conduct, as alleged above, entitles Plaintiffs to liquidated damages in an amount equal to the amount of any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation. 29 U.S.C. § 2617. since Defendant cannot show they acted in good faith,

## COUNT FOUR
**Wrongful Discharge in Violation of North Carolina Public Policy**
**North Carolina Common Law**
**Brought by Named Plaintiff on Behalf of Herself**

170. Named Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

171. It is the public policy of the State of North Carolina, as expressed in, inter alia, N.C. Gen. Stat. § 95-240, Article I, Section 1 of the North Carolina Constitution, and ubiquitously

throughout the statutes and laws of this State, that employees be free from harassment, discrimination, and retaliatory treatment in their employment.

172. Named Plaintiff participated in a legally protected activity by pursuing lawful employment with the expectation of having their constitutional and statutory rights respected and preserved by Defendant.

173. The termination of Named Plaintiff Marc's employment, resulting from her FMLA request and chemotherapy treatment, was wrongful as against the public policy of the State of North Carolina.

174. Such termination proximately caused Named Plaintiff to suffer emotional distress and other losses, as described above. Accordingly, Plaintiff Marc is entitled to compensatory damages under North Carolina law and interest pursuant to N.C. Gen. Stat. § 24-5(b).

175. Defendant Butterball's acts constituted willful, wanton, and malicious conduct, entitling Plaintiff to putative damages pursuant to Chapter 1D of the North Carolina General Statutes.

**PRAYER FOR RELIEF**

WHEREFORE, Named Plaintiff, on behalf of herself and all those similarly situated, prays that this Honorable Court:

1. Issue an Order certifying this action as a collective action under the FLSA, and designate Named Plaintiff as representative of all those similarly situated under the FLSA collective action;

2. Issue an Order certifying this action as a class action under the NCWHA, and designate Named Plaintiff as representative on behalf of all those similarly situated under the NCWHA class;

3. Award Plaintiffs and all those similarly situated actual damages for all unpaid wages found due, and liquidated damages equal in amount, as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a1);

4. Award Plaintiffs and all those similarly situated pre- and post-judgment interest at the statutory rate, as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a) as applicable;

5. Award Plaintiffs and all those similarly situated attorney's fees, costs, and disbursements as provided by FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(d);

6. Award Named Plaintiff all wages, salary, benefits, or other compensation denied to or lost by Plaintiff, and monetary losses sustained, as a result of Defendant Butterball's unlawful actions under FMLA;

7. Award Plaintiff's interest at the prevailing rate, as provided under 29 U.S.C. § 2617(a)(1)(A)(ii) and N.C. Gen. Stat. § 95-243(c);

8. Award Plaintiffs all consequential damages due as a result of Defendant Butterball's unlawful acts;

9. Award Plaintiffs punitive damages for Defendant Butterball's willful, wanton, and malicious conduct;

10. Grant such further legal and equitable relief as the Court deems necessary and proper in the public interest.

**<u>DEMAND FOR TRIAL BY JURY</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this July 3, 2025.


_/s/Gilda Adriana Hernandez_
Gilda A. Hernandez (NCSB No. 36812)
Hannah B. Simmons (NCSB No. 59579)
Matthew S. Marlowe (NCSB No. 60035)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Ste. 130
Cary, NC 27513.
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com

*Attorneys for Plaintiff*